*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. S. THREATT, Minor.

UNPUBLISHED
January 22, 2026
2:48 PM

No. 371277
Wayne Circuit Court
Family Division
LC No. 2022-000065-NA

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to MST under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist and will not be resolved in a reasonable amount of time), (g) (parent is financially able to care for child but fails to do so), and (j) (reasonable likelihood that child will be harmed if returned to parent's care). Respondent argues that the trial court erred in terminating his parental rights because there were not statutory grounds to do so, it was not in MST's best interests, and reasonable efforts were not made to reunify respondent with MST. We affirm.

## I. FACTS

MST has four half-siblings: MSS, MDW, LPS, and ANJ. The parental rights of MST's mother were terminated following the death of ANJ. The six-week old child was killed by LPS. When Child Protective Services (CPS) investigated the other children, they were all injured in various ways. MST was not placed with respondent because he had not visited MST in approximately six months and did not have suitable housing.

MST was diagnosed with attention deficit hyperactivity disorder (ADHD) and post-traumatic stress syndrome (PTSD). MST was moved between multiple foster placements because of her mental health issues and associated behavioral problems. Respondent was given a service plan consisting of therapy, a psychological evaluation, parenting classes, and maintaining suitable housing and income. Over the 19 months that MST was in the care and custody of the Department of Health and Human Services (DHHS), respondent was referred for services approximately six times. The foster-care worker and respondent's attorney believed that respondent had cognitive

delays, memory issues, and other mental health problems. However, he could not be referred to specialized services until he received a diagnosis from a psychological evaluation, which he repeatedly failed to attend. Respondent continually denied having any special needs and did not think MST had special needs either.

Respondent worked full-time at a gas station. He stated that he could not get any coverage for his shifts and would often miss appointments and parenting times because of his job. Respondent visited MST 13 times out of 116 offered parenting times. When he attended parenting times, respondent struggled to interact with MST. The trial court terminated respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding statutory grounds to terminate his parental rights. We disagree.

## A. STANDARD OF REVIEW

We review the trial court's findings that there are statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). Factual findings are clearly erroneous when we have a firm and definite conviction that a mistake has been made. *Id.* at 709-710.

## B. DISCUSSION

Statutory grounds must be found by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). Only one statutory ground need be found to terminate a respondent's parental rights. *Id.*

### 1. MCL 712A.19b(3)(c)(*i*)

The trial court may terminate a respondent's parental rights if more than 182 days have passed since the initial dispositional order, the conditions leading to the adjudication continue to exist, and there is no reasonable likelihood that the conditions will be remedied in a reasonable amount of time considering the child's age. MCL 712A.19b(3)(c)(*i*). The conditions continue to exist when the totality of the evidence supports a finding that there has not been a meaningful change in the conditions that led to the trial court assuming jurisdiction over the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). A failure to benefit from a service plan additionally supports termination under MCL 712A.19b(3)(c)(*i*). See *White*, 303 Mich App at 710.

It is agreed that, at the time of termination, more than 182 days had passed since the initial order of disposition in this case. MCL 712A.19b(3)(c)(*i*). The initial order of disposition was entered on October 11, 2022. Respondent's parental rights were terminated on May 10, 2024, approximately 19 months later. Jurisdiction was found over MST as to respondent because he could not provide a suitable home for MST and had not been in regular contact with MST.

The trial court did not did not clearly err when finding there was clear and convincing evidence supporting termination of parental rights under MCL 712A.19b(3)(c)(*i*) because the conditions leading to the trial court taking jurisdiction had not meaningfully changed. *Williams*, 286 Mich App at 272. Respondent did not consistently visit MST. He attended approximately seven in-person visits and six virtual visits with MST. He failed to attend approximately 100 visits with MST. Even after respondent requested virtual parenting times because of difficulty getting time off work, he did not consistently attend virtual visits. Respondent was not in regular contact with MST over the course of the case. After the petition to terminate his parental rights was filed, respondent began visiting MST more frequently but still missed more parenting times than he attended. Respondent continued to work long hours and did not have a solid plan for caring for MST if she was returned to his care. It is unclear how frequently respondent would see MST even if they were reunified because of respondent's inflexible work schedule. A lack of regular contact was one of the reasons the trial court assumed jurisdiction over MST, and respondent did not make a meaningful change in the frequency with which he saw MST. *Id.*

We acknowledge that respondent had resolved the situation of his unsuitable housing. He had moved into a two-bedroom apartment that had been deemed suitable by the foster-care worker. However, the home still was unfit for MST because respondent had not demonstrated that he would be able to care for MST. He was not aware of her special needs and actively denied that MST had any mental health issues. Respondent worked full-time and did not have a plan in place for caring for MST if she was returned to his care. He did not benefit from his service plan, which required, in part, parenting time and parenting classes. As discussed, respondent did not consistently attend his parenting times. He participated in some parenting classes, but was terminated early for missing too many classes. He did not seem to benefit from the parenting classes that he attended. Respondent frequently had to be redirected when interacting with MST and did not know how to appropriately discipline her during his parenting times. There was no evidence that respondent would begin seeing MST more frequently or be more equipped to parent her in a reasonable amount of time, especially given the minimal progress he had made in approximately 19 months. Therefore, the trial court did not clearly err in finding a ground to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*). *Williams*, 286 Mich App at 272. Because only one statutory ground is required for termination, we need not address the two remaining statutory grounds. See *Moss*, 301 Mich App at 80.

## III. REASONABLE EFFORTS

Respondent argues that petitioner did not make reasonable efforts to reunify him with MST because his service plan was not appropriately modified for his disabilities. We disagree.

## A. STANDARD OF REVIEW

This Court reviews "for clear error the trial court's factual findings that petitioner made reasonable efforts to reunify [the respondent] with the child." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). Factual findings are clearly erroneous when this Court has a firm and definite conviction that a mistake has been made. *White*, 303 Mich App at 709-710.

## B. DISCUSSION

In general, the petitioner must make reasonable efforts to reunify families and prevent the termination of parental rights. *Atchley*, 341 Mich App at 337; MCL 712A.19a(2). Absent aggravating circumstances, termination of parental rights is not appropriate unless reasonable efforts at reunification have been made. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). The petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). While the petitioner must provide services supporting reunification, the respondent also has the responsibility to participate in and benefit from the offered services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

"Title II of the [Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.] requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Hicks/Brown*, 500 Mich at 86, quoting 42 USC 12132. The petitioner must therefore make reasonable accommodations to its practices to avoid discrimination on the basis of a disability, unless doing so would fundamentally modify a provided service. *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). Efforts at reunification cannot be reasonable if the petitioner has not modified its "standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Hicks/Brown*, 500 Mich at 86. A respondent must establish that he or she would have fared better had different services been offered. *Sanborn*, 337 Mich App at 264.

Reasonable efforts were made to reunify respondent with MST. Respondent was provided with a service plan which required weekly parenting classes, a psychological evaluation, therapy, obtaining and maintaining suitable housing, obtaining and maintaining a legal source of income, and keeping in contact with the foster-care workers. As discussed above, respondent minimally complied with his service plan and did not benefit. *Frey*, 297 Mich App at 248.

Respondent argues that reasonable efforts were not made to reunify him with MST because his service plan was not modified for his disabilities. The foster-care worker acknowledged early in this case that respondent likely had cognitive impairments, memory issues, and other mental health problems. However, she also stated that to provide specialized services, such as parenting classes aimed at people with developmental disabilities, respondent needed a formal diagnosis. Respondent was referred six times for a psychological evaluation that could provide a diagnosis. He did not complete the evaluation until after statutory grounds were found to terminate his parental rights. Respondent also denied having any disabilities or special needs. Respondent does not argue that there were available programs that did not require a formal diagnosis.

Although the foster care worker could not refer respondent to more specialized services, she modified standard procedures to communicate with respondent about his service plan via phone call, text message, and letters. *Hicks/Brown*, 500 Mich at 86. This was aimed at helping to address respondent's cognitive and memory difficulties so he could participate in his service plan. Respondent makes no argument on appeal as to how his services could have been modified. *Sanborn*, 337 Mich App at 264. Because modifications were made to better communicate with respondent, he largely refused to obtain a formal diagnosis, and he did not identify any services that would have led to a better outcome, the trial court did not clearly err in finding that reasonable efforts were made to reunify respondent with MST. *Atchley*, 341 Mich App at 338.

## IV. BEST INTERESTS

Respondent argues that termination of his parental rights was not in MST's best interests. We disagree.

## A. STANDARD OF REVIEW

We review the trial court's findings that termination of parental rights is in a child's best interests for clear error. *White*, 303 Mich App at 713. Factual findings are clearly erroneous when we have a firm and definite conviction that a mistake has been made. *Id*. at 709-710.

## B. DISCUSSION

A preponderance of the evidence must support a finding of best interests. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). A best-interest analysis should focus on the child, not the respondent. *Moss*, 301 Mich App at 87. When determining whether termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement over the respondent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The trial court also may consider any history of domestic violence, the respondent's compliance with his or her service plan, the respondent's visitation history with the child, the child's well-being in his or her current placement, and the potential for adoption. *White*, 303 Mich App at 714. Placement with a relative weighs against termination. *Atchley*, 341 Mich App at 347.

The trial court appropriately considered MST's best interests. Respondent and MST had no bond. MST stated multiple times that she was scared of respondent and did not want to be in his care. Respondent displayed minimal parenting ability. He rarely visited MST, needed to be directed to interact with her, did not know how to discipline her, and often upset MST. MST had ADHD and PTSD, and permanency and stability would be very beneficial to MST's mental health. MST's placement with her fictive kin was a better fit because her fictive kin worked with MST's therapists and service providers. Respondent stated that he did not think MST had any mental health issues, indicating that he may stop MST from receiving the mental health care she needed. MST's behavior improved while she was with her fictive kin and declined when she had visits with respondent. Additionally, MST was bonded with her fictive kin.

There were no allegations of domestic abuse related to respondent in this case, so this factor does not weigh in favor of or against termination. *White*, 303 Mich App at 714. However, there were allegations of physical abuse against MST by one of her half-brothers, and respondent did not have an issue with MST staying in the mother's home with her abusive half-brother. Moreover, as discussed above, respondent minimally complied with his service plan. Respondent visited MST 13 times over a period of 19 months. MST was doing well in her fictive kin placement, and her fictive kin was willing to adopt MST. Although placement with a relative[1] weighs against termination of respondent's parental rights, this was outweighed by MST's need for the stability

---

[1] Fictive kin placements are considered relative placements. MCL 712A.13a(j)(*ii*).

and permanency of adoption. *Atchley*, 341 Mich App at 347. The trial court explicitly considered MST's relative placement in determining that termination of respondent's parental rights was in MST's best interests. Therefore, the trial court did not clearly err in finding that termination of respondent's parental rights was in MST's best interests. *White*, 303 Mich App at 709.

## V. CONCLUSION

The trial court did not err by terminating respondent's parental rights. We affirm.


/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado